R. OTERO v. THE STATE.

*No. 3919.    Decided December 5.*

1.  Continuance—Bill of Exceptions.—A bill of exceptions to the overruling of the application for continuance is absolutely essential in order to have the ruling of the court on the motion for continuance reviewed on appeal.

2.  Charge of the Court.—Where the indictment for theft alleged that the property was taken from the owner's possession and without his consent, and the evidence showed that the money was not taken from the possession of the owner, but from a third party who had acquired possession of it by chance, *held*, that a charge of the court which ignored the allegation of want of consent and possession of the alleged owner, and authorized a conviction without proof of such averments, and which further authorized a conviction on proof of want of consent from a third party not named

in the indictment, was radically erroneous. *Held*, further, that it was necessary for the court to instruct the jury with reference to the want of consent of the alleged owner, and it was unnecessary to charge them with the want of consent of a party who was not so named.

3. **Indictment — Theft of Money — Description and Proof of.** —Where the indictment described the stolen property as "$20 in money," and the description of the money proved was "a $20 bill," or "a $20 bill American money," *held*, that the proof is not sufficient under our statutes pertaining to theft, which limits the word "money" to legal tender coin or legal tender currency of the United States.

4. **Same—Allegation of Ownership.**—Where the evidence showed that one P. was in possession of and holding the money for the owner, who knew nothing of the matter, an indictment charging theft of said money should allege the possession and ownership in the party holding the money, and negative his want of consent, or it should have alleged the ownership in the true owner and the *possession* in the party holding the same for the true owner.

APPEAL from the District Court of Tarrant. Tried below before Hon. N. A. Stedman.

Appellant was indicted for the theft of $20 in money, and at his trial was convicted, with a punishment assessed at two years in the penitentiary. The evidence in the case is as follows, to-wit:

Joe Otero, a witness for the State, being sworn, says: My name is Joe Otero. The defendant's name is Joseph Rufus Otero. Some time ago, since Christmas, and just before I went before the grand jury as a witness in this case, one morning I was at my place of business, a saloon, corner Twelfth and Rusk streets, in Fort Worth—and two or three other persons were there. Among them was defendant, who was drinking considerably. Defendant there said that he had received $20 through the mail from his father, and to prove it he pulled a letter out of his pocket and began to hand it to the different ones in the group to read. They couldn't read it, and he handed it to me to read. At this time I didn't know defendant, and he didn't know me. When I read the letter, which was written in Spanish, I at once discovered that it was from my father to me, stating he inclosed to me $20 in money. I then told defendant that was my letter, and that the money belonged to me. I then asked him where the money was. He replied that he had spent it all but $10, which he had left at a certain place. I told him to pay me back the money, and he said he would if I would keep quiet about it. He said he got the letter from Mexican Pete the morning before. He said he would go and get the $10 for me, and left for that purpose. I never saw him again until I saw him in the calaboose after he was arrested. I told him then if he would pay me back my money I would not prosecute him. That $20 in money was my property, and I never gave defendant or anybody else my consent to take it. Mexican Pete runs a tamale stand about twenty-five feet from where I was in business, corner Twelfth and Rusk streets. This all occurred in Tarrant County,

Texas. I had some time before this written to my father to send me some money. Jose in Mexican is same as Joe in English. The Americans call me Joe Otero. My father lives in Monterey, Mexico. The defendant's father lives in San Luis Potosi, Mexico, in a different State from the one in which my father lives. The letter defendant handed me to read as above stated was in my father's handwriting, and was written by him at Monterey, Mexico, and in the letter he stated that he inclosed to me a $20 bill, American money. My father's name, and the name signed to the letter in question, is Francisco Otero. Defendant did not deny getting the money, and offered to give me what he had left, but I would not take it. I never had the money in my possession, and never saw the letter until he showed it to me, and didn't know he had it. I had never ordered my mail left at Mexican Pete's, and never authorized him to receive it.

Mexican Pete, a witness for the State, testified as follows: I have seen defendant. He came to my place, just back of Louis Girard's, on Twelfth and Rusk streets, Fort Worth, in company with another man, about a week before I was before the grand jury in this case. The man who was with him was a Mexican, and he was in my tamale stand about 12 o'clock that day and saw a letter addressed to Jose Otero, which had been given to me that morning by the mail carrier. The mail carriers know me, and when a letter comes for a Mexican whose address they do not know they bring it to my place and leave it until the owner comes and gets it. I knew Jose Otero, the witness in this case, but did not know his given name. When the defendant came in with the other Mexican, the other Mexican said to me, "Here is the man to whom that letter belongs." I went and got the letter from under the head of my bed and gave it to defendant. He opened and took out the letter and read it. There was a $20 bill folded up in the letter, which he also took. I saw him take the bill of money. They then went away, and I did not see them any more.

The defendant being sworn, testified in his own behalf as follows, to-wit: My name is Joe Rufus Otero. My father lives in San Luis Potosi, Mexico. My father addresses letters to me as follows, "Jose R. Otero" and "Jose Otero," sometimes one way and sometimes the other, and other persons address letters to me the same way. I live in Hillsboro, Texas. The day before I was arrested in this case, about 6 o'clock p. m., I came on the train from Hillsboro to Fort Worth. I got off the train, and on my way up town I met a Mexican, who learned my name and who told me that there was a letter for me at Mexican Pete's. He and I went together to Mexican Pete's and got the letter. Mexican Pete handed me the letter, and I opened it—tore open the end of the envelope. As I did this I saw a $20 bill in money folded by itself in the envelope. I put my fingers in the envelope and took out the bill

of money, but never took out the letter.   I never took the letter out of the envelope at all until next morning. · I was showing the letter to the crowd in the saloon, corner of Twelfth and Rusk streets, in Fort Worth, when witness Joe Otero got the letter.   When I got the money out of the envelope I put the envelope, with the letter still in it, in my coat pocket.   I did not read the letter, as stated by Mexican Pete. After putting the envelope and letter in my pocket, as above stated, I left Mexican Pete's and went up town to the White Elephant saloon and got the $20 bill changed.   I spent about half the money that night drinking and treating, and the next morning, about 9 o'clock, I went into a saloon, corner of Rusk and Twelfth streets, where was witness Joe Otero, whom I did not know at that time, and I never heard of any other man in the State by that name.   I told the crowd that I had got $20 from my father in a letter the morning before, and pulled out the letter to prove it to them.   I handed the letter to witness Joe Otero to read.   He then said it belonged to him; it was from his father, and that the money was his.   I then told him, after he showed me other letters from his father which convinced me that the letter in question was his, if the money was his I would pay it back to him; that I had spent all the money except $10, which I had left at a certain saloon, and about $2.50 in silver which I had in my pocket.   I offered him the silver, which he refused to take, saying he wanted his $20.   I told him I would go down to the saloon and get him the $10 I had left there.   I did not tell him I would pay him back if he would keep quiet.   I took the money believing it was mine, sent to me by my father.   About three weeks before this, in Hillsboro, I got a Mexican to write for me a letter to my father in San Luis Potosi, Mexico, to send me some money. I got this Mexican to write because my hand was sore and I could not write.   I had been sick for some time, and had been living at this Mexican's house.   At this time I had decided to come up to Fort Worth, and had the Mexican to direct my father to send me the money at Fort Worth, Texas.   I did not give him any street or number in Fort Worth.   I did not direct my father where to send the money, neither did I know whether or when he would send it.   I left Hillsboro for Fort Worth, as above stated.   I intended to remain in Fort Worth that night, the next day and night, and return to Hillsboro on the morning train.   I never saw witness Joe Otero any more, after what is above detailed occurred, until I was arrested and put in the calaboose, where he told me if I would pay him back he would not prosecute me. I went across the street to another saloon, and was in there the evening of the same day, where I was arrested.   My father's name is Emanuel Otero.   I am generally called Rufus Otero, but am sometimes called Joe Otero.

No briefs on file for either party.

DAVIDSON, Judge.—Omitting such portions as are unnecessary to be considered in determining the questions involved in this appeal, the indictment charges, "that one R. Otero * * * did unlawfully and fraudulently take $20 in money, the same being corporeal personal property of Joe Otero, from said owner's possession without his consent, with the intent to deprive said owner of the value thereof, and to appropriate the same to the use and benefit of him, the said R. Otero." * * *

The money taken was in fact the property of the alleged owner, and was sent him by his father in a letter through the mail from Monterey, Mexico. Upon its arrival in Fort Worth the letter fell into the hands, through proper sources, of a mail carrier, who, not knowing the party to whom the letter was addressed, delivered it to a party known and called "Mexican Pete," who agreed to deliver it to the owner. While Mexican Pete was in possession of the letter defendant called upon him, and claimed and obtained the letter. The money contained in the letter and taken by defendant is described as a $20 bill American money.

The court overruled defendant's application for a continuance, but no bill of exceptions was reserved to said ruling. Without a bill of exceptions in the record such refusal will not be reviewed. Willson's Crim. Stats., sec. 2187.

The court charged the jury, if they believed defendant "obtained the money described in the indictment from a person who was holding same for its owner, and further believe from the evidence that the person mentioned in the indictment as Joe Otero was at the time the owner of said money, and further believe from the evidence that defendant obtained said money from the possession of the person so holding the same for said Joe Otero, if it was so held, with the fraudulent intent to deprive the owner of the value thereof, and to appropriate same to the use and benefit of himself; and further believe from the evidence that the defendant did appropriate said money to his own use and benefit," etc., they would convict him. This is the only portion of the charge bearing upon this phase of the case. This charge is criticised as erroneous, in that it failed to instruct the jury as to the want of consent to the taking of the money upon the part of Joe Otero, the alleged owner thereof, from whose possession the money is alleged to have been taken without his consent; and in that it confined the finding of the jury to the want of consent of and taking from the possession of a person who was holding the same for the owner, but who was not alleged in the indictment to be the owner, nor in possession of the property, and whose consent was not negatived by the averments.

In respect to these contentions the position of defendant is correct. The charge must conform to and be limited by the allegations and proof. This charge ignored the allegation of want of consent, as well

as of possession of the alleged owner, and authorized a conviction without proof of such averments; and further required of the jury defendant's conviction on proof of the want of consent of a party not named in the indictment in connection with the property, either as owner or in possession thereof, provided they believed he took the money fraudulently. Willson's Crim. Stats., secs. 1309, 2336, 2337. It was necessary for the court to instruct the jury with reference to the want of consent of the alleged owner, and it was unnecessary to charge them in regard to the want of consent of a party who was not so named.

The property alleged to have been stolen was described as "twenty dollars in money." This would be a sufficient description on demurrer, but the proof must correspond with this allegation. "Money," as used in the statutes pertaining to theft, means legal tender coin or legal tender currency of the United States. Lewis v. The State, 28 Texas Ct. App., 140, and cited authorities. If the evidence had so shown, the proof would have been sufficient on this aspect of the case. The evidence on this point is that the money was a $20 bill, and in one place it is stated that the letter mentioned it as a $20 "bill American money." We do not think this evidence shows the "bill" was "money," as that term is understood under our statutes pertaining to the crime of theft. If the property was not money as above defined, then the indictment should have described it; and if that could not be done, then that fact also should be stated in the indictment. Code Crim. Proc., art. 427.

We would call attention to another question made to appear in the trial of this cause. The evidence is without contradiction that the witness Mexican Pete was in possession of and holding the money for the owner Joe Otero, who had never seen the money, nor heard of it, nor knew of it, much less been in possession of it. The indictment should have alleged the ownership and possession in this party, and negatived his consent to the taking; or it should have alleged ownership in Joe Otero, and possession in the party holding the money for him. Bailey v. The State, 18 Texas Ct. App., 426; Littleton v. The State, 20 Texas Ct. App., 168; Clark v. The State, 23 Texas Ct. App., 612; Tinney v. The State, 24 Texas Ct. App., 112.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Hurt, J., absent.